**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| JOSHUA LORENCZ,<br>Plaintiff,<br>v.<br>ENVISTA FORENSICS, LLC<br>Defendant. | Civil Action File No. ______________<br><br>Jury Trial Demanded |

**DEFENDANT ENVISTA FORENSICS, LLC'S ANSWER AND AFFIRMATIVE DEFENSES AND VERIFIED COUNTERCLAIMS**

Defendant ENVISTA FORENSICS, LLC ("Envista"), by and through the undersigned counsel, hereby submits the following Answer and Affirmative Defenses to Plaintiff Joshua Lorencz's ("Plaintiff" or "Lorencz") Complaint for Declaratory Judgment and states as follows:

## PARTIES

**COMPLAINT ¶1:**

Plaintiff Joshua Lorencz is an individual residing in Northlake, Texas.

**ANSWER:**

Upon information and belief, Envista admits that Plaintiff resides in Northlake, Texas.

**COMPLAINT ¶2:**

Defendant Envista Forensics, LLC ("Envista") is a Georgia limited liability company with its principal place of business located at 5565 Glenridge Connector, Suite 900, Atlanta, Georgia 30342. Envista may be served through its registered agent, CT Corporation, System at 289 S. Culver Street, Lawrenceville, Georgia 30046-4805.

**ANSWER:**

Envista admits the allegations contained in Paragraph 2.

**JURISDICTION AND' VENUE**

**COMPLAINT ¶3:**

This is an action for declaratory judgment brought pursuant to O.C.G.A. § 9-1-4 *et seq.* to declare the rights and other legal relations surrounding questions of actual controversy that presently exist between Plaintiff and Defendant.

**ANSWER:**

Envista admits that Plaintiff's Complaint purports to assert a claim under O.C.G.A. § 9-1-4 *et seq.*, but denies all remaining allegations contained in Paragraph 3.

**COMPLAINT ¶4:**

A controversy of a judicial nature presently exists between the parties, which demands a declaration by this Court in order that Plaintiff may have his rights and duties determined under the applicable contract between the parties.

**ANSWER:**

Envista admits that a controversy exists between the parties, which gives rise to *Envista's Counterclaims*, and supports relief in Envista's favor. Envista denies all remaining allegations in Paragraph 4.

**COMPLAINT ¶5:**

By contract, the parties agreed that any dispute arising out of or in connection with the present dispute lies exclusively in Fulton County, Georgia.

**ANSWER:**

Envista admits that in connection with his employment, Plaintiff received an agreement entitled, "Confidentiality, Work Product, and Non-Solicitation Agreement" and "Confidentiality, Work Product, and Non-Raiding Agreement" and that both established exclusive venue in a federal or state court in Fulton County, Georgia. Envista denies all remaining allegations in Paragraph 5.

**COMPLAINT ¶6:**

The parties contractually waived any objection to jurisdiction in the State of Georgia.

**ANSWER:**

Envista admits that jurisdiction is proper in the State of Georgia. Envista further states that the referenced "Confidentiality, Work Product, and Non-Solicitation Agreement" and "Confidentiality, Work Product, and Non-Raiding Agreement" are the best evidence of their contents and denies any allegations in Paragraph 6 that is inconsistent with the contents of the referenced agreements.

**COMPLAINT ¶7:**

Jurisdiction and venue are proper in this Court.

**ANSWER:**

Envista admits that jurisdiction and venue are proper in United States District Court for the Northern District of Georgia.

## THE PARTIES' PRIOR EMPLOYMENT RELATIONSHIP

**COMPLAINT ¶8:**

Plaintiff Joshua Lorencz was born and raised in California, where he resided at all times through and including May 13, 2021.

**ANSWER:**

Envista lacks knowledge or information sufficient to form a basis as to the truth or falsity of the allegations in Paragraph 8, and on that basis denies same.

**COMPLAINT ¶9:**

In March of 2021, while a California resident, Plaintiff Joshua Lorencz began communicating with Envista about potential employment.

**ANSWER:**

Envista admits that Plaintiff and Envista engaged in discussions about a potential employment relationship. Envista lacks knowledge or information sufficient to form a basis as to the truth or falsity of the remaining allegations in Paragraph 9, and on that basis denies same.

**COMPLAINT ¶10:**

In connection with its potential employment of Plaintiff Joshua Lorencz, Envista prepared an agreement entitled "Confidentiality, Work Product and Non-Solicitation Agreement" that identified Plaintiff Joshua Lorencz as Envista's employee (the "First Agreement"). A true and correct copy of the First Agreement is attached hereto as **Exhibit A**.

**ANSWER:**

Envista admits that in connection with his employment, Plaintiff received an agreement entitled, "Confidentiality, Work Product, and Non-Solicitation Agreement." Envista denies Plaintiff's characterization of the agreement as the "First Agreement" and further states that the referenced Agreement is the best evidence of its contents and denies all remaining allegations in Paragraph 10 that are inconsistent with its contents.

**COMPLAINT ¶11:**

On March 18, 2021, Envista signed the First Agreement.

**ANSWER:**

Envista admits on or about March 18, 2021, that a representative for Envista signed an agreement titled "Confidentiality, Work Product, and Non-Solicitation Agreement." Envista denies Plaintiff's characterization of the agreement as the "First Agreement."

**COMPLAINT ¶12:**

The First Agreement contained a restrictive covenant under the heading "Protection of Customers" that among other things, sought to prohibit Joshua Lorencz from providing services to any Envisia customer with whom he had any "Material Contact" for a year following the termination of his employment relationship with Envista. (*See* **Ex. A**, First Agreement ¶ 5).

**ANSWER:**

Envista admits the "Confidentiality, Work Product and Non-Solicitation Agreement" contains a "Protection of Employees" heading. Envista denies

Plaintiff's characterization of the agreement as the "First Agreement" and further states that the referenced Agreement is the best evidence of its contents and denies all remaining allegations in Paragraph 12 that are inconsistent with its contents.

**COMPLAINT ¶13:**

The First Agreement contained a restrictive covenant under the heading "Protection of Employees" that, among other things, sought to prohibit Plaintiff Joshua Lorencz from hiring certain Envista employees or prior Envista employees for a year following the termination of his employment relationship with Envista. (*See* **Ex. A**, First Agreement ¶ 6).

**ANSWER:**

Envista admits the "Confidentiality, Work Product and Non-Solicitation Agreement" contains a "Protection of Customers" heading. Envista denies Plaintiff's characterization of the agreement as the "First Agreement" and further states that the referenced Agreement is the best evidence of its contents and denies all remaining allegations in Paragraph 13 that are inconsistent with its contents.

**COMPLAINT ¶14:**

On March 30, 2021, Plaintiff Joshua Lorencz signed the First Agreement in California, where he then resided.

**ANSWER:**

Envista admits that the agreement entitled "Confidentiality, Work Product, and Non-Solicitation Agreement" is dated March 30, 2021 beneath Plaintiff's signature. Envista denies Plaintiff's characterization of the agreement as the "First Agreement" and further states that the referenced Agreement is the best evidence of

its contents and denies all remaining allegations in Paragraph 14 that are inconsistent with its contents

**COMPLAINT ¶15:**

In connection with its potential employment of Plaintiff Joshua Lorencz, Envista prepared a separate agreement entitled "Confidentiality, Work Product and Non-Raiding Agreement" that identified Plaintiff Joshua Lorencz as Envista's employee (the "Operative Agreement"). A true and correct copy of the Operative Agreement is attached hereto as **Exhibit B**.

**ANSWER:**

Envista admits that in connection with his employment, Plaintiff received an agreement entitled, "Confidentiality, Work Product, and Non-Raiding Agreement." Envista denies Plaintiff's characterization of the agreement as the "Operative Agreement" and further states that the referenced Agreement is the best evidence of its contents and denies all remaining allegations in Paragraph 15 that are inconsistent with its contents.

**COMPLAINT ¶16:**

The First Agreement and the Operative Agreement concerned the same subject matter—namely, the terms, conditions, and restrictive covenants governing the employment relationship between Plaintiff Joshua Lorencz and Envista.

**ANSWER:**

Envista denies the allegations in Paragraph 16 as stated.

**COMPLAINT ¶17:**

Unlike the First Agreement, the Operative Agreement did not contain a restrictive covenant seeking to prohibit Plaintiff Joshua Lorencz from providing services to any Envista customer with whom Plaintiff Joshua Lorencz had any

"Material Contact" for a year following the termination of his employment relationship with Envista. (*See generally* **Ex. B**, Operative Agreement.)

**ANSWER:**

Envista denies Plaintiff's characterization of the agreements as the "First Agreement" and "Operative Agreement" and further states that the referenced Agreements are the best evidence of their contents and denies all remaining allegations in Paragraph 15 that are inconsistent with their contents..

**COMPLAINT ¶18:**

On March 30, 2021—12 days after signing the First Agreement—Envista executed the Operative Agreement.

**ANSWER:**

Envista denies the allegations in Paragraph 18 as stated.

**COMPLAINT ¶19:**

On March 30, 2021, after signing the First Agreement, Plaintiff Joshua Lorencz executed the Operative Agreement in California, where he then resided.

**ANSWER:**

Envista lacks knowledge or information sufficient to form a basis as to the truth or falsity of the allegations in Paragraph 19, and on that basis, denies them.

**COMPLAINT ¶20:**

The Operative Agreement contained a Paragraph entitled "Entire Agreement" providing as follows:

> This Agreement represents the entire agreement between the parties and supersedes any and all other communications, representations, arrangements and agreements *relating to the subject matter of this Agreement*, whether oral or in writing, between Employee and the

> Company. Other than modification by a court as provided: in Section 13, no provision of this Agreement may be changed, altered, modified or waived except in a writing signed by Employee and an officer of the Company.

(*See* **Ex. B**, Operative Agreement ¶ 16 (emphasis in original).)

**ANSWER:**

Envista denies Plaintiff's characterization of the agreement as the "Operative Agreement" and further states that the referenced Agreement is the best evidence of its contents and denies all remaining allegations in Paragraph 20 that are inconsistent with its contents.

**COMPLAINT ¶21:**

The Operative Agreement included provisions similar to those contained in the First Agreement regarding the protection of confidential information and work product, but replaced the non-solicitation clause and other employment restrictions with a non-raiding clause concerning co-workers. (*Compare* **Ex, A**, First Agreement ¶¶ 5 & 6, *with* **Ex. B**, Operative Agreement ¶5.) Specifically, in the Operative Agreement, Envista replaced paragraphs 5 & 6 of the First Agreement (the "Superseded Paragraphs") with a Paragraph titled "Protection of Co-Workers." (*See id*.)

**ANSWER:**

Envista admits that the "Confidentiality, Work Product, and Non-Raiding Agreement" and the "Confidentiality, Work Product, and Non-Solicitation Agreement," which the parties entered into contemporaneously, both contain covenants to which Plaintiff is bound. Envista denies the remaining allegations in Paragraph 21.

**COMPLAINT ¶22:**

Pursuant to the Operative Agreement, Plaintiff Joshua Lorencz began working for Envista on May 17, 2021.

**ANSWER:**

Envista admits that Plaintiff began working for it on May 17, 2021. Envista denies Plaintiff's characterization of the agreement as the "Operative Agreement" and all remaining allegations in Paragraph 22.

**COMPLAINT ¶23:**

The Operative Agreement was never amended or rescinded in a signed writing or otherwise.

**ANSWER:**

Envista admits the allegations in Paragraph 23. Envista denies Plaintiff's characterization of the agreement as the "Operative Agreement" and all remaining allegations in Paragraph 23.

**COMPLAINT ¶24:**

Plaintiff Joshua Lorencz worked for Envista pursuant to the Operative Agreement from May 17, 2021, through and including May 22, 2025.

**ANSWER:**

Envista admits that Plaintiff worked for Envista from May 17, 2021, through and including May 22, 2025. Envista denies the characterization of the agreement as the "Operative Agreement" and all remaining allegations in Paragraph 24.

**COMPLAINT ¶25:**

On June 2, 2025, following his resignation from Envista, Plaintiff Joshua Lorencz began working for a new employer, Rimkus Consulting Group, Inc. ("Rimkus").

**ANSWER:**

Envista admits that Plaintiff began working for a direct competitor, Rimkus Consulting Group, Inc., a direct competitor of Envista. Envista lacks knowledge or information sufficient to form a basis as to the truth or falsity of the remaining allegations in Paragraph 25, and on that basis denies them.

**COMPLAINT ¶26:**

Envista sent a demand letter dated June 27, 2025 (the "Demand") to Plaintiff Joshua Lorencz that, among other things, threatened to enforce against Plaintiff Joshua Lorencz the Superseded Paragraphs of the First Agreement. A true and correct copy of this demand is attached hereto as **Exhibit C**.

**ANSWER:**

Envista admits that it transmitted a letter to Plaintiff, dated June 27, 2025. Envista denies all remaining allegations in Paragraph 26.

## COUNT 1 - DECLARATORY JUDGMENT

**COMPLAINT ¶27:**

Plaintiff Joshua Lorencz realleges and incorporates paragraphs 1 through 26 of this Complaint as if set forth fully herein.

**ANSWER:**

Envista incorporates its answers to Paragraph 1 through 26 as if fully restated here.

**COMPLAINT ¶28:**

The Operative Agreement explicitly states that it represents the entire agreement between the parties and supersedes any and all other communications, representations, arrangements and agreements relating to the subject matter of the First Agreement.

**ANSWER:**

Envista denies the allegations contained in Paragraph 28.

**COMPLAINT ¶29:**

The Operative Agreement and the First Agreement concern the same subject matter.

**ANSWER:**

Envista denies the allegations contained in Paragraph 29.

**COMPLAINT ¶30:**

The Demand from Envista threatens to enforce against Plaintiff Joshua Lorencz the First Agreement, including the Superseded Paragraphs, even though the First Agreement was superseded in its entirety by the Operative Agreement.

**ANSWER:**

Envista denies the allegations contained in Paragraph 30.

**COMPLAINT ¶31:**

As confirmed by the Demand, a justiciable controversy exists between the parties as to whether Plaintiff Joshua Lorencz's employment with Envista and any post-employment obligations owed by Plaintiff Joshua Lorencz were/are governed by the terms of the First Agreement or the Operative Agreement.

**ANSWER:**

Envista admits that a justiciable controversy exists which gives rise to *Envista's Counterclaims*, and supports relief in Envista's favor. Envista denies the remaining allegations contained in Paragraph 31.

**COMPLAINT ¶32:**

Plaintiff Joshua Lorencz is entitled to a judgment declaring that the First Agreement was superseded in its entirety by the Operative Agreement.

**ANSWER:**

Envista denies the allegations contained in Paragraph 32.

**COMPLAINT ¶33:**

Plaintiff Joshua Lorencz is entitled to a judgment declaring that his employment with Envista and any post-employment obligations he may owe to Envista are governed by the Operative Agreement.

**ANSWER:**

Envista denies the allegations contained in Paragraph 33.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Joshua Lorencz respectfully requests that this Court:

1. Declare that the Confidentiality, Work Product, and Non-Solicitation Agreement entered into by Plaintiff Joshua Lorencz with Envista was superseded by the Confidentiality, Work Product, and Non-Raiding Agreement;

2. Declare that the Confidentiality, Work Product, and Non-Raiding Agreement governs any post-employment obligations owed by Plaintiff Joshua Lorencz to Envista;

3. Award Plaintiff Joshua Lorencz his costs and reasonable attorneys' fees incurred in bringing this action; and

4. Grant such other further relief as the Court deems just and proper.

**ANSWER:**

Envista states that the prayer for relief is not an allegation to which a response is required. To the extent, a response is required, Envista denies that Plaintiff is entitled to any relief whatsoever.

## GENERAL DENIAL

All allegations not specifically admitted in this Answer are hereby deemed denied.

## AFFIRMATIVE DEFENSES

Envista asserts the following affirmative defenses against Plaintiff.

## FIRST DEFENSE

The Complaint fails, in whole, or in part, to state a claim upon which relief can be granted.

## SECOND DEFENSE

The action is barred by the doctrines of estoppel, laches, and/or waiver.

**THIRD DEFENSE**

Plaintiff's claims are barred, in whole, or in part, to the extent he has failed to mitigate any alleged damages.

**FOURTH DEFENSE**

Plaintiff is not entitled to attorneys' fees, costs, or expenses in this action because his claims are improperly pled, lack evidentiary support and are subject to dismissal.

**FIFTH DEFENSE**

The Complaint is barred, in whole or in part, by Plaintiff's own negligence.

**SIXTH DEFENSE**

The Complaint is barred, in whole, or in part, because all actions taken by Envista were for legitimate, lawful business purposes.

**RESERVATION OF RIGHTS**

Further, Envista has not knowingly or intentionally waived any applicable affirmative defenses. As such, Envista reserves the right to amend or assert additional defenses as facts are developed in the course of additional investigation and discovery.

**DEFENDANT ENVISTA FORENSICS, LLC'S**
**VERIFIED COUNTERCLAIMS**

Comes Now Plaintiff/Counterclaimant Envista Forensics LLC ("Envista"), by and through the undersigned counsel, and for its Counterclaims against Defendant Joshua Lorencz ("Defendant" or "Lorencz"), states as follows:

## I. PARTIES

1. Envista Forensics, LLC ("Envista") is a citizen of the States of Missouri and Georgia as hereinafter described. In particular:

   (a) Envista is a limited liability company organized and existing under the laws of the State of Georgia and its principal place of business and chief executive office is located in Fulton County, Georgia within this District.

   (b) Envista is a wholly-owned subsidiary of Cor Partners, Inc., ("Cor Partners") and CorPartners is the sole member of Envista.

   (c) CorPartners is a corporation that is organized and existing under the laws of the State of Missouri and has its principal place of business and chief executive office in the State of Georgia.

2. Joshua Lorencz is a natural person who, upon information and belief, is domiciled and resides in the State of Texas, including by his own admission.

## II. JURISDICTION AND VENUE

3. The Court has original jurisdiction over this action under 28 U.S.C. § 1332 because: (a) Envista and Lorencz are citizens of different states, (b) this lawsuit, among other things, seeks to protect trade secrets and other Confidential Information (as defined below), customer relationships, and goodwill of Envista having a value far in excess of Five Hundred Thousand Dollars ($500,000) exclusive of interest and costs, thus satisfying the amount in controversy requirement.

4. The Court has personal jurisdiction over Defendant because: (a) Defendant entered into both the Confidentiality, Work Product And Non-Solicitation Agreement ("Non-Solicitation Agreement") (attached as Exhibit 1, and the Confidentiality, Work Product And Non-Raiding Agreement ("Non-Raiding Agreement"), attached as Exhibit 2, which are a subject of this action, in the State of Georgia, (b) for valuable consideration received Defendant agreed in the Non-Solicitation Agreement, and the Non-Raiding Agreement that (1) he submitted to personal jurisdiction in the State of Georgia for any action arising out of or in connection with the Non-Solicitation Agreement, and the Non-Raiding Agreement; (2) he waived any and all personal rights under the laws of any state to object to jurisdiction within the State of Georgia; and (3) for any cause of action arising out of or in connection with the Non-Solicitation Agreement, and the Non-Raiding Agreement, venue was solely proper in Fulton County, Georgia. **Exhibit 1**, ¶12;

**Exhibit 2**, ¶11, (c) any violation of the Non-Solicitation Agreement, or the Non-Raiding Agreement, or use of trade secrets of Envista would cause irreparable harm and damage to, and have a financial impact upon Envista in Georgia, and Defendant upon information and belief knows and/or reasonably would know that any such conduct, if unlawful, would reasonably expect to have an impact upon the financial condition of Envista in Georgia.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391 because (a) a substantial part of the events giving rise to the claims asserted in the Complaint occurred in this judicial district; (b) a substantial part of property that is the subject of the action is situated in this District; (c) Defendant agreed that for any cause of action arising out of or in connection with the Agreements at issue venue was solely proper in Fulton County, Georgia. **Exhibit 1**, ¶12; **Exhibit 2**, ¶11; and (d) Defendant is subject to personal jurisdiction in this Court for the reasons described above.

## III. FACTUAL ALLEGATIONS

6. Envista brings these counterclaims as a result of the actions of its former employee, Defendant Joshua Lorencz. Specifically, this is an action to enforce and enjoin the breach and/or threatened breach of the terms of the Non-Solicitation Agreement, and the Non-Raiding Agreement between Envista and Defendant, and to enjoin the threatened use of confidential information and trade secrets of Envista and its Affiliates, as hereinafter described.

7. Envista is engaged in the business of forensic engineering and failure analysis, fire and explosion investigation, building consulting, digital forensics, and equipment loss consulting and equipment restoration (hereinafter referred to as the "Business").

8. Envista's Business serves many insurance providers and legal professionals across the globe, including in the United States and North America, and multiple Fortune 500 companies.

9. Envista had, and at all times relevant to this lawsuit had, a division that provides forensic engineering, digital forensics, consulting services, and major loss analysis and forensic investigation. Digital forensics involves examining and analyzing electronic data for legal or investigational purposes and in some cases presenting the findings in court or providing expert testimony and assistance in litigation.

10. Defendant Lorencz was previously employed by Envista in the Digital Forensics Practice, including most recently as a Senior Digital Forensics Consultant, until he voluntarily resigned his employment with limited notice.

11. Defendant's employment ended May 22, 2025.

12. At all times relevant to this matter, Rimkus Consulting Group, Inc. ("Rimkus"), upon information and belief, is and was a full-service engineering, forensic consulting, digital forensics, and construction dispute resolution services

firm serving a wide-range of industries including the consumer, industrial, and healthcare industries.

13. Rimkus is a direct competitor of Envista in the forensic investigations, engineering consulting, and specialty consulting services segments of the Business, and on information and belief has undertaken steps to develop and/or grow a digital forensic services practice. In this regard, Rimkus currently competes directly with respect to providing services related to investigations, forensic investigations, and damage and condition assessments, in various parts of the United States and is a competitor of Envista within various such fields, including on information and belief digital forensics.

14. The Business both Envista and Rimkus are in is a highly competitive industry. Any edge is critical to securing and maintaining business, including Defendant's knowledge of Confidential Information (defined below) of Envista and his contacts and relationships with customers. As described below, Defendant possesses Confidential Information.

**DEFENDANT'S EMPLOYMENT WITH ENVISTA**

15. Defendant worked for Envista for over four years with responsibilities working in digital forensics, investigations, consulting, examinations, and analysis.

16. Defendant was employed in the Digital Forensics practice of Envista during his Envista employment with responsibilities working in digital forensics,

investigations, consulting, examinations, and analysis. He was based out of an office in the State of Texas. Lorencz's last position was as a Senior Digital Forensics Examiner, and was earning a salary at the annual rate of $128,000.00 at the time he resigned. He performed services and had responsibilities for multiple customers and customer files.

17. During his employment with Envista, Defendant had access to and learned of Confidential Information impacting multiple customers and developed substantial contacts and relationships with customers of Envista. This information included, but was not limited to, customer lists, customer order histories and pricing preferences, and pricing policies.

18. The Confidential Information that Defendant learned about and maintains would provide Defendant and Rimkus a significant competitive advantage in competing with Envista.

**OPERATIVE AGREEMENTS**

19. On March 30, 2021, Lorencz was offered a position with Envista as a Digital Forensics Examiner working in the Carrolton, Texas office, starting on May 17, 2021.

20. According to Envista's personnel records, on March 30, 2021, Lorencz accepted this offer, and, on the *same* day, signed both the Non-Solicitation Agreement and Non-Raiding Agreement provided to him as conditions of his

employment. *See* **Exhibit 1** and **Exhibit 2**. He received a $5,000 signing bonus as part of this offer.

21. Defendant executed and entered into the Non-Solicitation Agreement as a condition of his long-term employment with Envista in anticipation and with the understanding that he was going to be living and working out of the office in the State of Texas. (See **Exhibit 3**, Email Correspondence between Josh Lorencz and Jason Bergerson).

22. Simultaneous to executing his Non-Solicitation Agreement, Defendant also signed a Non-Raiding Agreement applicable to his short-term tenure in California which he understood and agreed to being read together with his Non-Solicitation Agreement. (*See* **Ex. 2 and 3**).

23. Defendant relocated to the Dallas Texas area for the position, and on information and belief began residing at 2716 Bedford Road, Northlake, Texas 76226 and continued to reside at that address in the State of Texas throughout his employment with Envista.

24. Under the terms of the Non-Solicitation Agreement and Non-Raiding Agreement, Defendant promised and agreed that during his employment and thereafter, he would not disclose or use any “Confidential Information” as that term is defined in the Non-Solicitation Agreement. *See* **Exhibit 1**, ¶3; **Exhibit 2**, ¶3.

25. The Non-Solicitation Agreement and Non-Raiding Agreement both define such Confidential Information as:

> proprietary data and trade secrets of the Company relating to the Company's Business which (i) are disclosed to Employee or of which Employee becomes aware as a consequence of Employee's relationship with the Company; (ii) have value to the Company; (iii) are not generally known to competitors of the Company; and (iv) which include the Company's business and marketing strategies and plans; existing and planned products and services; specialized strategies and practices for soliciting, selling and servicing existing and prospective customers of the Company; the identity of existing customers of the Company; the identity of prospective customers and employment candidates that are being solicited or that have been targeted for solicitation by the Company; the identity, job titles, contact information, responsibilities and authority of key contacts at existing and prospective customers of the Company; the particularized preferences and needs of existing and prospective customers of the Company; the dates, performance requirements and timelines, staffing arrangements, pricing and payment terms, and other terms and conditions of services that the Company has provided, is providing, or plans to provide to existing and prospective customers of the Company; business best practices and know-how; budgets, financial data and projections; personnel data; compensation data; databases and other information available on the Company's IT systems; and other sensitive, highly-valuable information of the Company and its former, existing and prospective customers. Notwithstanding the foregoing, "Confidential Information" shall not include the foregoing information that Employee reasonably demonstrates (x) was in Employee's possession prior to Employee's commencement of employment with the Company, from sources other than the Company; (y) was independently developed by Employee outside of Employee's employment with the Company, from non-confidential sources and without reference to any of the Company's Confidential Information; or (z) has become generally known in the industry either prior to or during Employee's employment with the Company, through no fault of

> Employee or any other person or entity obligated to keep such information confidential.
>
> (b) "Prohibited Term" means the period of time during Employee's employment with the Company and the one (1) year period immediately following the termination of Employee's employment with the Company for any reason, whether that termination is initiated by Employee or the Company.
>
> (c) "Material Contact" with a customer will be deemed to exist where, at any time during the two (2) year period preceding the termination of Employee's employment with the Company, (i) Employee had direct dealings with the customer through any means; (ii) the Company's dealings with the customers were coordinated or supervised by Employee; (iii) Employee acquired Confidential Information about the customer as a result of Employee's relationship with the Company; or (iv) Employee derived a commission, bonus or other compensation from the Company as a result of products or services provided to each customer.

26. In the Non-Solicitation Agreement, Defendant also agreed and promised to adhere to the following among other terms:

> 3. **<u>Protection of Confidential Information.</u>** Employee acknowledges and agrees that the Company's Confidential Information has been developed by the Company over a significant period of time and at substantial expense; is the subject of reasonable efforts by the Company to safeguard its confidentiality; has greatly contributed to the Company's profitability, growth and success; constitutes a valuable and protectable business asset of the Company; is and will remain the sole and exclusive property of the Company; and that Employee's use or disclosure of the Confidential Information in breach of this Agreement would cause permanent, incalculable and irreparable injury and damage to the Company. Accordingly, Employee agrees that Employee shall not, at any time during the Prohibited Term, directly or indirectly, reproduce, use, distribute, disclose, publish, misappropriate or otherwise disseminate any Confidential Information for Employee's own

> purpose or benefit or the purpose or benefit of any person or entity other than the Company. Additionally, Employee shall strictly comply with the Georgia Trade Secrets Act.
>
> ….
>
> 5. **Protection of Customers.** Employee acknowledges and agrees that by virtue of Employee's employment with the Company, Employee will be introduced to and involved in the solicitation, selling and servicing of existing and prospective customers of the Company. Employee further acknowledges the Company's legitimate interest in protecting its customers during the Prohibited Term. Accordingly, Employee agrees that during the Prohibited Term, Employee shall not, directly or indirectly, for Employee's own purpose or benefit or the purpose or benefit of any person or entity other than the Company, solicit, market, offer, sell or otherwise provide any products or services similar to or otherwise competitive with those offered by the Company to any customer of the Company with which Employee had Material Contact. The Prohibited Term shall be extended by the full duration of any breach of this provision by Employee.
>
> 6. **Protection of Employees.** Employee acknowledges and agrees that the Company has expended, and will continue to expend, substantial time and expense in the identification, recruitment, orientation, training and retention of its employees. Accordingly, Employee agrees that during the Protected Term, Employee shall not, directly or indirectly, for Employee's own purpose or benefit or the purpose or benefit of any person or entity other than the Company, solicit, recruit, encourage or induce to resign, offer employment to, hire or otherwise retain any individual employed with the Company at that time or at any other time during the preceding six (6) month period. The Prohibited Terms [sic] shall be extended by the full duration of any breach of this provision by Employee.

27. In the Non-Solicitation Agreement Defendant promised and agreed that the agreement "shall be governed by, and construed in accordance with, the laws of

the State of Georgia without giving effect to any choice or conflict of law principal or rule…"

28. The restrictions in the Non-Solicitation Agreement are reasonably necessary for the protection of the business and goodwill, Confidential Information, trade secrets, and customer contacts and relationships of Envista.

29. In the Non-Raiding Agreement, Defendant promised, understood, and agreed that:

> **1. Definitions**. The following terms shall have the following meanings for purposes of this Agreement:
>
> ……
>
> (c) "Co-Worker" means any employee of the Company who (a) lives in California, and (b) had business contacts with Employee during Employee's employment with the Company.

30. In Non-Raiding Agreement, Defendant also promised and agreed to adhere to the following among other terms:

> **5. Protection of Co-Workers.** Employee agrees that during the Protected Term, Employee shall not, directly or indirectly, interfere with the Company's business by raiding any Co-Worker or otherwise solicit any Co-Worker to work for any other person or entity that competes with the Company in the Company's Business.

31. In the Non-Raiding Agreement, just as with the Non-Solicitation Agreement, Defendant promised and agreed that the agreement "shall be governed by, and construed in accordance with, the laws of the State of Georgia without giving effect to any choice or conflict of law principal or rule…"

32. The no raiding restrictions in the Non-Raiding Agreement are reasonable in duration and scope, and protect and safeguard the trade secrets, goodwill, valuable Confidential Information, and other protectable interests of Envista.

33. Under both the Non-Solicitation Agreement and the Non-Raiding Agreement, Defendant promised and agreed to pay attorney's fees and costs incurred by Envista in the event he breached, or threatened to breach, either agreement, respectively.

**TRADE SECRET INFORMATION**

34. In connection with the Business, Envista has developed and maintained Confidential Information (herein defined as said term also in defined in the Agreements) that is not generally known to competitors of Envista.

35. The Confidential Information is an important key to the success and continued success of Envista's Business.

36. The Confidential Information is not generally known nor readily ascertainable by proper means by other competitors.

37. The Confidential Information derives independent economic value from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure and use.

38. The Confidential Information was developed and/or acquired at considerable cost, time, and expense over a period of years: representing an investment of millions of dollars over a period of years and having a value far in excess of Five Hundred Thousand Dollars ($500,000). It would require, at a minimum, many years, and considerable time and expense, to recreate even a portion of this Confidential Information through lawful means.

39. Further, Envista has invested considerable time, effort, and expense in establishing, acquiring, and developing contacts and relationships with is customers and potential customers through a unique strategy.

40. The Confidential Information provides a competitive advantage not enjoyed by other persons who do not possess the Confidential Information. This Confidential Information is not generally known outside Envista and is only accessible to a limited groups of individuals.

41. Envista's success in this highly competitive business is dependent upon a number of factors, including the Confidential Information that has been developed over the years through the expenditure of substantial time and resources, and its customer contacts and relationships.

42. Envista used, and continue to use, reasonable and diligent efforts to maintain and protect its Confidential Information, including by protecting access to such information with passwords, having policies regarding the nondisclosure and

unauthorized use of business information, including confidentiality restrictions, and requiring certain employees receiving Confidential Information to sign agreements containing provisions regarding Confidentiality, Work Product and Nondisclosure of the same.

43. The Confidential Information described above constitutes confidential business information and trade secrets within the meaning of applicable law.

**RESIGNATION AND POST-EMPLOYMENT CONDUCT**

44. The Former Head of Envista's Digital Forensics Practice, Lars Daniel ("Daniel"), upon information and belief, met with Defendant and Justin Ussery, another Envista consultant in the digital forensics practice, on or about February 17, 2025. After Daniel's employment with Envista ended on April 7, 2025, upon information and belief, Daniel again met with Defendant and Ussery in Texas in May 2025.

45. Subsequently, on May 22, 2025, Defendant and Justin Ussery submitted identical notices of resignation. In his resignation notice, Defendant stated he had "accepted an opportunity for employment elsewhere."

46. Envista has since learned, by reason of a posting on LinkedIn, Online web pages, and legal filings by Defendant, that Defendant has accepted a position and commenced employment with Rimkus, and has commenced performing duties as a "Principal Consultant" for Rimkus. Defendant's LinkedIn profile reflecting his

employment at Rimkus is attached hereto as **Exhibit 4** and incorporated herein by reference.

47. In addition, Defendant made a comment on LinkedIn regarding Daniel's announcement of Rimkus's digital forensics group and commitments as Director of Digital Forensics for Rimkus, stating "We are going to do great things for the industry with 1st in class service!" Defendant also has made posts on LinkedIn advertising his attendance at Digital Forensics events on behalf of Rimkus and his work with Justin Ussery at Rimkus, which posts are attached hereto collectively as **Exhibit 5 at 18**.

48. Defendant's contacts on LinkedIn include customers he worked with and had substantial and material contacts and relationships with at Envista.

49. Rimkus competes in the same businesses in which Envista engages in, in parts of the United States where Envista provides the same or similar services.

50. By reason of the foregoing and also based on information and belief, Plaintiff is now engaging in the same type of work in digital forensics consulting and management as he did for Envista.

51. Furthermore, since departing Envista, numerous clients have transferred their business to Rimkus.

52. As a result of his departure and employment with Rimkus, Envista sent Defendant and cease-and-desist letter demanding he comply with his Non-

Solicitation Agreement. A true and correct copy of the letter sent to Defendant is attached, marked **Exhibit 6**, and incorporated by reference.

53. Instead of responding to the cease-and-desist letter, Defendant filed this lawsuit in Fulton County, Georgia, which asserted a claim for a declaratory judgment that the Non-Solicitation Agreement was void and unenforceable.

54. As an employee at Rimkus, Defendant will be in a position to use and disclose, without the consent of Envista, Confidential Information to compete against Envista and assist Rimkus in developing a competitive edge an improving its services *vis a vis* those of Envista and its subsidiaries.

55. Use of this Confidential Information would give Rimkus a substantial unfair advantage in competing for business, setting prices, developing its service offerings, and positioning its services and in developing a competing digital forensics practice.

56. By reason of the above, it is likely that Defendant, without the consent of Envista, will use and/or disclose trade secrets or other Confidential Information of Envista, and/or there is a substantial threat that Defendant will do so.

57. Envista has not consented to Defendant working for Rimkus or using or disclosing trade secrets or other Confidential Information.

58. Envista is suffering immediate irreparable harm and injury by Defendant's employment with Rimkus in that Defendant is working for a competitor

armed with knowledge of trade secrets and other Confidential Information of Defendant and can use Confidential Information and contacts and relationships with customers to take business away from Envista.

59. Envista would sustain great and irreparable loss and damage if Defendant is permitted to use or disclose Confidential Information or violate the Confidentiality, Work Product And Non-Solicitation Agreement and/or the Confidentiality, Work Product And Non-Raiding Agreement.

60. By reason of the foregoing, Envista believes it has and/or will suffer immediate and irreparable harm, which is not presently quantifiable.

61. The likelihood of disclosure and threatened misappropriation of Confidential Information, and the violation of the Confidentiality, Work Product And Non-Solicitation Agreement, have caused and/or will cause Envista to suffer immediate, substantial, continuing and irreparable harm and injury for which Envista has no adequate remedy at law, including but not limited to the potential loss of business and its competitive edge.

62. Unless enjoined, Defendant will persist, to Envista's continuing harm, in the above-described unlawful behavior, for the redress of which Envista has no adequate remedy at law.

63. Envista lacks an adequate remedy at law for any such unlawful conduct, including because Defendant lacks the resources to respond in damages from such violations, and any use or misappropriation of Confidential Information.

64. Unless enjoined, Defendant will persist, to Envista's continuing harm, in the above-described unlawful behavior, and will continue to cause Envista to suffer immediate, substantial, continuing, and irreparable harm and injury, for which Envista has no adequate remedy at law.

65. The harm which Envista will suffer if Defendant is not enjoined far outweighs any harm Defendant would suffer from the issuance of injunctive relief. Envista is likely to succeed in pursuit of this injunctive relief under applicable law and has a clear right to this relief.

## COUNT I

## BREACH OF THE NON-SOLICITATION AND NON-RAIDING AGREEMENTS

66. Envista re-alleges and incorporates by reference paragraphs 1 through 65 of Envista's Complaint set out above, as if fully set out herein.

67. The Non-Solicitation Agreement and Non-Raiding Agreement Defendant entered into with Envista constitute valid and enforceable contracts.

68. The Non-Solicitation Agreement and Non-Raiding Agreement protect legitimate protectable interests in trade secrets, goodwill, valuable Confidential Information, and substantial customer and employee relationships of Envista.

69. The non-solicitation restrictions in the Non-Solicitation Agreement are reasonable in duration and scope, containing temporal and geographic limitations needed to and protect the legitimate protectable interests of Envista in its trade secrets, goodwill, valuable Confidential Information, and substantial customer and employee relationships, and are enforceable under Georgia law.

70. The non-disclosure restrictions in the Non-Solicitation Agreement and the Non-Raiding Agreement are reasonable in duration and scope, and protect the legitimate protectable interests of Envista in its trade secrets, goodwill, valuable Confidential Information, and other protectable interests of Envista, and are enforceable under Georgia law.

71. By reason of the foregoing, Defendant on information and belief is in violation of both the Non-Solicitation Agreement and the Non-Raiding Agreement. And/or there is a real and immediate threat that Defendant will misuse or disclose Confidential Information, and solicit customers of Envista through his employment with Rimkus in violation of the Non-Solicitation Agreement.

**COUNT II**

**THREATENED MISAPPROPRIATION OF TRADE SECRETS UNDER THE GEORGIA UNIFORM TRADE SECRETS ACT (O.C.G.A. § 10-1-76, *et seq.*)**

72. Envista re-alleges and incorporates by reference paragraphs 1 through 65 of Envista's Verified Complaint set out above, as if fully set out herein.

73. The Confidential Information is the result of years of work and substantial expenditure of time, effort and expense, and constitutes a trade secret within the meaning of the Georgia Uniform Trade Secrets Act.

74. The trade secrets acquired and developed by Envista derive independent economic value from the fact that they are not generally known to, nor readily ascertainable by proper means by, the public.

75. Upon information and belief, in Defendant's employment with Rimkus, Defendant will use and/or disclose trade secrets of Envista, and there is a real and substantial likelihood and threat that Defendant will do so and also thereby violate the Non-Solicitation Agreement, and the Non-Raiding Agreement. This threatened use and disclosure must be enjoined under applicable law. It places Defendant in a position where Defendant could readily use and disclose Confidential Information to enable Rimkus to compete more effectively.

76. Defendant's employment with Rimkus impairs Envista's ability to protect its trade secrets. If permitted to continue competing with Envista, there is a substantial threat and likelihood that Defendant will use or disclose, such

Confidential Information, and such disclosure will compromise Envista's edge in the market—an edge which Envista has spent substantial time and resources developing and maintaining.

77. Upon information and belief, there is a substantial threat that Defendant will disclose and use Envista's trade secrets as defined under applicable law, and thereby misappropriate those trade secrets.

78. Envista has not consented, and do not consent, expressly or by implication, to the use or disclosure by Defendant of any of its trade secrets..

## COUNT III

## MISAPPROPRIATION OF TRADE SECRETS: DEFEND TRADE SECRETS ACT_ (18 U.S.C. § 1836, *et seq*.)

79. Envista re-alleges and incorporates by reference paragraphs 1 through 65 of Envista's Verified Complaint set out above, as if fully set out herein.

80. The Confidential Information is the result of years of work and substantial expenditure of time, effort and expense, and constitutes a trade secret within the meaning of the 18 U.S.C. § 1839(3). This information includes, but is not limited to Envista's customer lists, client order history and preferences, business strategies, and pricing discounts.

81. The trade secrets acquired and developed by Envista derive independent economic value from the fact that they are not generally known to, nor readily ascertainable by proper means by, the public.

82. Envista exerts substantial efforts to keep their Confidential Information secret.

83. During the course of his employment with Envista as a Senior Digital Forensics Consultant, Defendant had access to and did access Envista's confidential and proprietary information, including but limited to financial information and business information. The confidential and proprietary information also constitutes trade secrets within the meaning of 18 U.S.C. § 1839(3).

84. Since leaving Envista, however, Defendant has misappropriated Envista's trade secrets within the meaning of 18 U.S.C. § 1839(3) by using the trade secrets in conjunction with his work with Rimkus.

85. Defendant's misappropriation of Envista's trade secrets entitles Envista to injunctive relief and damages, pursuant to 18 U.S.C. § 1836(b)(3).

86. At all pertinent times, Defendant has acted willfully, maliciously, and in bad faith.

87. As a result of Defendant's misappropriation, Envista will suffer irreparable harm.

**COUNT IV**

## DECLARATORY JUDGMENT

### (VIOLATION OF THE NON-SOLICITATION AND NON-RAIDING AGREEMENTS)

88. Envista re-alleges and incorporates by reference paragraphs 1 through 65 of Envista's Verified Complaint set out above, as if fully set out herein.

89. By reason of the foregoing, Defendant upon information and belief has violated the Non-Solicitation Agreement.

90. There is a ripe, justiciable controversy between the parties.

91. In addition to the other relief requested herein, Envista is entitled to declaratory judgment in that Defendant violated the non-solicitation provisions of the Non-Solicitation Agreement, and violated the non-disclosure provisions of both the Non-Solicitation Agreement and the Non-Raiding Agreement.

**WHEREFORE,** Envista prays that:

A. Defendant be enjoined and restrained from violating the Non-Solicitation Agreement, including by inducing, soliciting, attempting to induce, or encouraging any customer of Envista with whom Defendant had a Material Contact to terminate its relationship with Envista, or soliciting, attempting to solicit, or accepting business from any customer of Envista with whom Defendant had a

Material Contact (as defined in the Confidentiality, Work Product And Non-Solicitation Agreement) for any purpose or business;[1]

B. Defendant be enjoined and restrained from violating the Non-Raiding Agreement by soliciting, recruiting, or encouraging any current or former employee or independent contractor of Envista to leave his or her employment or engagement with Envista, or contracting with or hiring any such employee;

C. Defendant be enjoined and restrained from using or disclosing to any person any Confidential Information or trade secrets of Envista;

D. The Court declare the Non-Solicitation Agreement and the Non-Raiding Agreement to be binding, valid and enforceable;

E. This Court issue a temporary restraining order and/or a preliminary injunction, as and to the extent requested by Envista, restraining Defendant from doing any of the acts set forth above until entry of the Court's final judgment;

F. To the extent the same may be awarded within the Court's equitable jurisdiction, or within the Court's general jurisdiction, Defendant be assessed any damages suffered as a result of any violation of the Non-Solicitation Agreement or the Non-Raiding Agreement., and/or misappropriation of trade secrets according to proof at trial;

[1] Envista does not seek relief in the State of California as it pertains to Paragraphs 5-6 of the Confidentiality, Work Product And Non-Solicitation Agreement, or Paragraph 5 of the Confidentiality, Work Product And Non-Raiding Agreement.

G. Defendant be ordered immediately to preserve and return to Plaintiff any Confidential Information, and all copies thereof, in whatever form stored or maintained, including any list or compilation of customer information maintained by Defendant, and preserve all electronic information in his possession or control pertaining to Envista or his current employment with Rimkus;

H. Defendant be ordered to immediately return all property of Envista in his possession or control, certify that Defendant no longer retains any property of Envista, and allow Plaintiff Envista to inspect and examine any electronic storage device or computer used by Defendant for evidence of Confidential Information;

I. Envista be granted such other and further relief as the Court may deem just and proper, including, but not limited to, an award of attorney’s fees and costs incurred to enforce the Non-Solicitation Agreement, an equitable accounting for all profits lost by Envista or reaped by Defendant and/or Defendant’s current employer in consequence of any breach by Defendant of the Non-Solicitation Agreement or the Non-Raiding Agreement, and an accounting as to all persons to whom the Confidential Information, or any portion thereof, has been disclosed by Defendant.

Dated: August 6, 2025

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Mitchell A. Robinson*

Mitchell A. Robinson
Georgia Bar No. 457665
mrobinson@seyfarth.com
Daniel P. Hart
Georgia Bar No. 141679
dhart@seyfarth.com
Natalie Costero
Georgia Bar No. 911778
ncostero@seyfarth.com
Ralph Culpepper III
Georgia Bar No. 953215
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309
Telephone: (404) 704-9637
Facsimile: (404) 892-7056

*Attorneys for Defendant*

**VERIFICATION**

I, Sarah Howe, verify under penalty of perjury under the laws of the United States of America that I have read the foregoing Verified Complaint for Injunctive Relief and Damages, and that the statements contained therein are accurate to the best of my knowledge, information, and belief.

Sarah Howe

Envista Forensics, LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

JOSHUA LORENCZ,

Plaintiff,

v.

ENVISTA FORENSICS, LLC

Defendant.

Civil Action File No. ____________

Jury Trial Demanded

**CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2025, I cause the foregoing ***DEFENDANT ENVISTA FORENSICS, LLC'S ANSWER WITH AFFIRMATIVE DEFENSES AND VERIFIED COUNTERCLAIMS*** to be filed with the Clerk of the Court via the Court's CM/ECF filing system, which will automatically send email notification to all counsel on record.

*/s/ Mitchell A. Robinson*
Mitchell A. Robinson
Counsel for Defendant